# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**RONALD SATISH EMRIT,**

      **Plaintiff,**

v.                                      **Case No. 2:22-CV-00110**

**BOARD OF IMMIGRATION
APPEALS, et al.**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the plaintiff's Complaint (ECF No. 2) and Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for pre-trial management as well as the submission of proposed findings and a recommendation for disposition. (ECF No. 3.) For the reasons explained more fully herein, it is **RECOMMENDED** that Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1) be **DENIED**, that the Complaint be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B), and prefiling sanctions be imposed upon Plaintiff as a vexatious litigator, prohibiting him from proceeding *in forma pauperis* in any future cases in this District except as provided by the Court.

## I.    BACKGROUND

### A.    Plaintiff's Litigation History in the Federal Courts

A well-documented "serial *pro se* filer" since approximately 2013, Plaintiff Ronald Satish Emrit ("Plaintiff" or "Emrit") has initiated more than three hundred civil actions in district courts nationwide, from Maine to Hawaii; despite the fact that most or all of these complaints have been dismissed for improper venue or failure to state a claim, Plaintiff continues to abuse the *in forma pauperis* ("IFP") privilege by recycling the same patently frivolous allegations against various government agencies and officials in inscrutable pleadings that demonstratively clog the federal district courts with meritless litigation.[1] Due to Plaintiff's "extensive and abusive nationwide litigation practices . . . Plaintiff has been deemed a vexatious litigant or subjected to prefiling requirements in multiple district courts across the country." *Emrit v. Trump*, 1:19-CV-18, 2019 WL

---

[1] As they are matters of public record, the Court takes judicial notice that multiple federal district courts have dismissed complaints filed by Mr. Emrit and found that he improperly engaged in the same litigation conduct at issue here. *Lydick v. Erie Ins. Prop. & Cas. Co.*, 358 F. Supp. 3d 552, 557 (S.D. W. Va.), *aff'd*, 778 F. App'x 271 (4th Cir. 2019) (taking judicial notice of the plaintiff's underlying complaint and dismissal order in a prior claim). For a representative sampling, *see Emrit v. Fed. Bureau of Investigation*, 6:20-CV-191, 2020 WL 1452495, at *2 (Feb. 21, 2020), *report and recommendation adopted*, 2020 WL 1451623 (M.D. Fla. Mar. 25, 2020), *appeal dismissed*, 20-11361-B, 2020 WL 3959459 (11th Cir. May 13, 2020) ("Plaintiff is a frequent filer of frivolous claims in federal court."); *Emrit v. Devos*, 2:20-MC-00316, 2020 WL 1279205, at *1 (Feb. 19, 2020), *report and recommendation adopted*, 2020 WL 1272606 (S.D. Tex. Mar. 17, 2020), *appeal dismissed*, No. 20-40228, 2020 WL 5650457 (5th Cir. July 23, 2020) ("Emrit is a serial *pro se* filer of frivolous complaints in federal court, and this case is no exception."); *Emrit v. Fed. Bureau of Investigation*, 20-CV-265, 2020 WL 731171, at *1 (S.D. Cal. Feb. 13, 2020), *appeal dismissed*, 20-55332, 2020 WL 5648232 (9th Cir. July 24, 2020) ("Plaintiff Ronald Satish Emrit is a serial *pro se* filer of frivolous complaints in federal court against government agencies and officials . . . . Most or all of these complaints have been dismissed for improper venue or failure to state a claim"); *Emrit v. Universal Music Grp.*, 3:19-CV-05984, 2019 WL 6251365, at *2 (Nov. 4, 2019), *report and recommendation adopted*, 19-CV-5984, 2019 WL 6251192 (W.D. Wash. Nov. 22, 2019) ("Plaintiff has a history of abusing the IFP privilege and Plaintiff has been acknowledged as a vexatious litigator in at least six district courts."); *Emrit v. Trump*, 1:19-CV-18, 2019 WL 140107, at *1 (Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 935028 (S.D. Ohio Feb. 26, 2019) (noting that "Plaintiff has filed hundreds of cases and appeals in the federal courts alone" and recommending pre-filing sanctions barring further abusive conduct); *Emrit v. Nat'l Acad. of Recording Arts & Scis.*, A-14-CA-392-SS, 2015 WL 518774, at *4 (W.D. Tex. Feb. 5, 2015) ("Emrit has been repeatedly warned against filing meritless and frivolous claims by this and other courts. As is demonstrated by his national filing history, Emrit abuses the *in forma pauperis* process and clogs the federal district courts with meritless litigation.")

140107, at *2 (Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 935028 (S.D. Ohio Feb. 26, 2019). A district court in Hawaii catalogued a portion of those nationwide orders:

> The Court again takes judicial notice of Emrit's extensive record of filing in districts nationwide, including those in which he has been deemed a vexatious litigant or subjected to prefiling requirements. *See, e.g., Emrit v. Az. Supreme Court*, 15-CV-01718, 2016 WL 910151, at *4 (D. Ariz. Mar. 9, 2016) (finding "that there is an adequate record to support the issuance of a vexatious litigant order against Plaintiff" and citing cases); *Emrit v. Nat'l Acad. of Recording Arts & Scis.*, 1:14-cv-00392, 2015 WL 518774 (W.D. Tex. Feb. 5, 2015) (discussing forty-seven meritless federal lawsuits filed by Emrit since March 2013 and entering a vexatious litigant order against Plaintiff); *Emrit v. Soc. Sec. Admin.*, 2:14-cv-01760, 2015 WL 4597834 (D. Nev. July 29, 2015) (entering vexatious litigant order against Emrit); *Emrit v. Continuum Legal*, 1:16-CV-1424, 2017 WL 2622368, *2 (E.D. Va. Jan. 31, 2017) ("Plaintiff is a serial pro se litigant who is subject to pre-filing injunctions in at least two courts."); *Emrit v. Sec. of State*, 16-CV-610-S, 2017 WL 3209449 (D.R.I. Jan. 9, 2017) (noting that plaintiff has been declared a "vexatious filer" in several districts and enjoined from further filings without leave of court). *See also Emrit v. Am. Commc'ns Network, Inc.*, 583 F. App'x. 46, 47 (4th Cir. 2014) (cautioning Emrit "that federal courts, including this court, are authorized to impose sanctions upon vexatious and repetitive litigants for frivolous filings [and warning him that] [f]urther frivolous filings by Emrit may result in this court sanctioning him, including by ordering a prefiling injunction that limits his access to the court") (citation omitted).

*Emrit v. Sec'y of Hawaii*, 17-CV-00504, 2018 WL 264851, at *2 n.2 (D. Haw. Jan. 2, 2018). *See also Emrit v. Devos*, 8:20-cv-00773, 2020 WL 9078298, at *1 (M.D. Fla. Apr. 20, 2020) (enjoining Emrit from filing any document in the district without prior court approval); *Emrit v. Simon*, 17-cv-04605 SRN-SER (D. Minn. Dec. 8, 2017), Dkt. Nos. 4 and 9 (dismissing Emrit's claims with prejudice and ordering that he be restricted from filing new cases in the district unless represented by licensed counsel, or with prior written authorization from a judicial officer, while noting that Emrit has initiated approximately 150 federal lawsuits since 2013).

"Notwithstanding such sanctions and admonishments, as well as a resounding lack of success in the federal courts that would give pause to most litigants, Plaintiff has given no hint of abating his pernicious conduct." *Trump*, 2019 WL 140107, at *2. Plaintiff's continued scattershot filings fail to heed numerous district courts' efforts to explain in detail the federal venue requirements and the specific deficiencies in his pleadings under Rule 8 of the Federal Rules of Civil Procedure.[2] That includes at least five other cases in

---

[2] *See, e.g., Emrit v. Sec'y, U.S. Dep't of Educ.*, 829 F. App'x 474, 475 (11th Cir. 2020) (affirming district court's *sua sponte* dismissal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), as an abuse of the judicial process, and for improper venue); *Emrit v. Holland & Knight, LLP*, 693 F. App'x 186, 187 (4th Cir. 2017) (concluding that Emrit's "patently frivolous . . . complaint was properly subject to dismissal under 28 U.S.C § 1915(e)(2)(B)(ii)"); *Emrit v. Hardy*, 692 F. App'x 705, 706 (4th Cir. 2017) (finding that dismissal, rather than transfer of venue, appropriate when Emrit's complaint "patently failed" to state a viable claim); *Emrit v. Cegavske*, 692 F. App'x 706 (4th Cir. 2017) ("Our review of Emrit's complaint reveals that it is patently frivolous"); *Emrit v. Nevada Dep't of Motor Vehicles*, 692 F. App'x 707, 708 (4th Cir. 2017) (affirming dismissal when "the interests of justice did not require transferring" venue); *Emrit v. DeVos*, 20-CV-266, 2021 WL 913646, at *2 (S.D. Cal. Mar. 10, 2021) (concluding that, "[a]lthough Emrit's complaint could be transferred based on improper venue . . . the better course of action [is] to dismiss the case at the outset rather than burden another court with a facially frivolous suit" that was "identical [to] actions in at least ten other federal district courts throughout the United States" and contained "allegations [that] [we]re conclusory and lack[ed] an arguable basis in law and fact"); *Emrit v. Horus Music Video Distribution*, 20-CV-00007, 2020 WL 1822597, at *4 (D. Haw. Apr. 10, 2020), *appeal dismissed*, 20-15916, 2020 WL 6588744 (9th Cir. July 24, 2020) (finding that Emrit's "Complaint alleges no plausible basis for venue in the District of Hawaii"); *Emrit v. Fed. Bureau of Investigation*, 20-CV-30018, 2020 WL 4004032, at *2 (D. Mass. Apr. 8, 2020), *report and recommendation adopted*, 20-CV-30018, 2020 WL 4003264 (D. Mass. July 15, 2020) (finding dismissal warranted when Emrit's complaint alleged "no factual allegations linking his purported claims to the FBI" and venue was improper); *Emrit v. Nat'l Football League*, 20-CV-00062, 2020 WL 619526, at *2 n.1 (S.D. Cal. Feb. 10, 2020) (dismissing with prejudice "[i]n light of the fact that all allegations in Plaintiff's instant Complaint have been previously litigated or are already pending before other courts" and venue was improper); *Emrit v. Desert Parkway Behav. Hosp.*, 18-CV-00435, 2019 WL 2397801, at *4 (D. Haw. June 6, 2019) (dismissing Emrit's complaint with prejudice based on improper venue); *Emrit v. Soros*, 19-CV-00125, 2019 WL 1923629, at *2 (D. Haw. Apr. 30, 2019) (dismissing Emrit's complaint *sua sponte* pursuant to §1915(e)(2)(B) for failure to state a claim); *Emrit v. NH Sec'y of State*, 17-CV-489-PB, 2018 WL 6834596, at *1 (D.N.H. Dec. 27, 2018) (dismissing Emrit's action for failure to state a claim); *Emrit v. Montevista Mental Hosp.*, 18-CV-00443, 2018 WL 6978092, at *2 (D. Haw. Dec. 21, 2018), report and recommendation adopted, 18-CV-00443 ACK-KJM, 2019 WL 123872 (D. Haw. Jan. 7, 2019) (dismissing Emrit's complaint for lack of venue); *Emrit v. Hammond*, 3:17-CV-02736, 2018 WL 2118021, at *1 (D.S.C. May 8, 2018) (dismissing Emrit's claims); *Emrit v. Condos*, 5:17-CV-0204-GWE (D. Vt. May 3, 2018) (dismissing for lack of jurisdiction); *Emrit v. Denney*, 1:17-CV-00411, 2018 WL 1865159, at *1 (D. Idaho Apr. 18, 2018) (dismissing complaint with prejudice); *Emrit v. Dunlap*, 1:17-CV-402, 2018 WL 1321567 (D. Me. Mar. 14, 2018), *appeal dismissed*, 18-1221, 2018 WL 4381529 (1st Cir. June 12, 2018) (dismissing for lack of jurisdiction); *Emrit v. Kan. Sec'y of State*, 2:17-CV-2593 (D. Kan. Feb. 13, 2018) (dismissing for failure to state a claim); *Emrit v. Silrum*, 1:17-CV-212, 2018 WL 10152596, at *1 (D.N.D. Feb. 7, 2018) (dismissing Emrit's claims as "frivolous"); *Emrit v. Oliver*, 17-CV-1024, 2018 WL 626254, at *3 (D.N.M. Jan. 30, 2018), *aff'd*, 735 F. App'x 501 (10th Cir. 2018) (dismissing Emrit's claims); *Emrit v. Gale*, 4;17-CV-3133, 2018 WL 618414, at *6 (D. Neb. Jan. 29, 2018) (finding that Emrit's complaint failed to state a claim for relief); *Emrit v. Sec'y of State of Alaska*, 5:17-CV-00006-SLG, 2017 WL 11556648, at *3 (D. Alaska Dec. 11, 2017) (dismissing complaint as frivolous and "devoid of any factual allegations of specific

4

this Court. Plaintiff initiated four civil actions in this Court on September 12, 2017; all four of those cases were transferred to other district courts based upon a lack of venue in this Court.[3] Plaintiff initiated a fifth civil action on August 9, 2021, and it was likewise transferred to another district court on August 10, 2021.[4]

Despite the consistent decisions of multiple district courts explaining why his filings are improper, Plaintiff continues to abuse the IFP privilege to initiate strikingly similar and/or duplicative lawsuits in federal forums that bear no relation to the allegations set forth in his pleadings. As the U.S. District Court for the Middle District of Florida explained, "savvy and experienced *pro se* litigants, such as Emrit, understand the legal system's reluctance to sanction them and use it to their advantage," knowing that, despite "obviously not proceeding in good faith," the "courts will generally give them the

---

wrongs committed" by the defendants when "the factual allegations Mr. Emrit proffers run the gamut of Mr. Emrit being bumped into by a child while standing in a Wal-Mart pharmacy line in Texas, to his admiration of actresses Livia Brito and Adriana Lima, to the activities of numerous political public figures"); *Emrit v. Wyo. Sec. of State*, 2:17-cv-00174-SWS (D. Wyo. Oct. 31, 2017), Dkt. No. 3 (dismissing case); *Emrit v. Johnson*, 2:17-cv-13337 GCS-RSW (E.D. Mich. Oct. 19, 2017), Dkt. No. 4 (dismissing with prejudice Emrit's claims as frivolous); *Emrit v. Lawson*, 1:17-CV-03624, 2017 WL 4699279, at *3 (S.D. Ind. Oct. 19, 2017) (concluding that Emrit's "action is patently frivolous and therefore subject to dismissal under 28 U.S.C. § 1915(e)(2)," noting that "Mr. Emrit has a long history of filing *pro se* frivolous litigation in other districts and has been barred from filing in several of them," and warning that "the Court will not hesitate to impose a filing bar sanction if he proceeds to file any additional frivolous cases in this Court"); *Emrit v. Marion Cty. Hous. Auth.*, 3:16-cv-1854, 2017 WL 743882, *4 (D. Ore. Feb. 23, 2017) (dismissing Emrit's claims with prejudice and noting that Emrit "has filed complaints in numerous other districts in which he brings claims that are nearly identical"); *Emrit v. Heck*, 17-CV-74, 2017 WL 5624943, at *1 (D. Md. Jan. 26, 2017) (finding dismissal appropriate when "the claim asserted here is frivolous" and transfer would not be in "the interest of justice").

[3] *See Emrit v. Shady Grove Hospital*, 2:17-cv-3974 (S.D. W. Va. Sept. 15, 2017), at ECF No. 5 (transferring case to the District of Maryland); *Emrit v. Laurel Regional Hospital*, 2:17-cv-3973 (S.D. W. Va. Sept. 15, 2017), at ECF No. 5 (same); *Emrit v. Holy Cross Hospital*, 2:17-cv-3964 (S.D. W. Va. Sept. 15, 2017), at ECF No. 5 (same); *Emrit v. Univ. of Md. Midtown Campus*, 2:17-cv-03966 (S.D. W. Va. Sept. 15, 2017), at ECF No. 5 (same).

[4] *Emrit v. PNC Bank*, 2:21-cv-446 (S.D. W. Va. Aug. 10, 2021), at ECF No. 4 (transferring case to the Western District of Pennsylvania. At that time, this Court noted that Plaintiff had "filed two identical cases" in the Middle District of Pennsylvania and Eastern District of Virginia. *Id.* at 2 n.1.

benefit of the doubt and there will be few or no consequences to their actions." *Devos*, 2020 WL 9078298, at *3.

### B.    **Plaintiff's Current Complaint**

Continuing with the same pattern of conduct, on March 3, 2022, Plaintiff—appearing *pro se*—filed the Complaint in this case, asserting claims of negligence, various constitutional violations, and violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, and 42 U.S.C. § 1983, against five federal agencies: the Department of Justice's Board of Immigration Appeals; United States Citizenship and Immigration Services; United States Customs and Border Protection; United States Department of State; and United States Department of Homeland Security (collectively, the "Defendants"). (ECF No. 2.) The Complaint also alleges, without elaboration, that venue is proper in this Court "pursuant to 28 U.S.C.A. Sections 1391 and 1400." *Id*. at 5.

Plaintiff alleges that he is "an indigent, disabled, and unemployed resident of the state of Florida." *Id*. at 3. Plaintiff asserts that between 2019 and 2020, while living with his sister in Hagerstown, Maryland, he began communicating with "Mary from Kharkov City, Ukraine" via smartphone applications including Ukraine Date and WhatsApp. *Id*. at 5-6. Plaintiff subsequently "lost the number for Mary from Kharkov City, Ukraine . . . [and] was unable to communicate with [her] between the summer of 2020 and recently in January of 2022." *Id*. at 6. He alleges that "[a]fter looking all over the world for 'Mary from Kharkov City, Ukraine'" he was able to "finally find[] her on Muslim.com." *Id*. According to Plaintiff, Mary is now his fiancé, and "[b]ecause of the emergency of the war between Russia and the Ukraine, the plaintiff is trying to obtain a fiancé visa or K-29 visa for his fiancé." *Id*. at 2, 6.

In order to cut through what he describes as expensive and "unnecessary 'red tape' . . . involved with immigration paperwork and legal status as a legal permanent resident," Plaintiff asserts that he "is looking for a declaratory judgment and/or injunctive relief as an equitable remedy" which would require the Defendants to "provide assistance to the plaintiff with regards to helping him obtain a fiancé or K-1 visa for his fiancé 'Mary from Kharkov City, Ukraine' in addition to airfare from CheapoAir such that Mary can obtain refugee status and/or political asylum because of the emergency of the war in Ukraine[.]" *Id.* at 2, 11. He also seeks "maybe to a lesser extent pecuniary damages as punitive or compensatory damages in the amount of $80,000." *Id.* at 9. Plaintiff does not allege that any of the Defendants have improperly denied a visa to "Mary" or that they have improperly failed to "provide assistance" to Plaintiff in his attempts to secure a visa for his fiancé; rather, Plaintiff wishes to prospectively compel Defendants to aid in securing a visa for his fiancé should Defendants not assist Plaintiff as he will be imploring them to do. *See id.*

Importantly, Plaintiff indicates in the Complaint that he filed duplicative actions "in the U.S. District Courts of Maryland, Eastern Virginia, and Western Virginia in Charlottesville because of the fact that the plaintiff does not know which location as exclusive, original or subject matter jurisdiction." *See id.*; (ECF No. 2 at 3.) On March 1, 2022, the Eastern District of Virginia dismissed Plaintiff's duplicative complaint without prejudice, explaining that the case was not ripe for decision and therefore the court lacked subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. *Emrit v. Bd. of Immigration Appeals*, 3:22-CV-00117-JAG (E.D. Va. Mar. 1, 2022), ECF No. 2 at 2. That court's dismissal order noted the conditional language used in Plaintiff's complaint—that the Defendants "will have committed negligence," "will have

committed a violation of 'black-letter law' provisions of federal law," and "will have violated" various constitutional provisions "if and only if" these agencies do not assist Plaintiff in obtaining a "visa for his fiancé 'Mary from Kharkov City, Ukraine.'" *Id.* The court specifically advised Plaintiff that because "his claims depend on whether Mary from Kharkov City, Ukraine, will secure a visa . . . [and] plaintiff does not allege that Mary has applied for a visa nor that she has been denied one, this case is simply not ripe for adjudication." *Id.*

Ignoring that district court's finding that his case "fails to satisfy the requirements of the ripeness doctrine" and therefore "prevents judicial consideration" of the issues, *see id.*, two days later on March 3, 2022, Plaintiff filed the instant action. (ECF No. 2.) The mirror-image Complaint sets forth the same unripe allegations that Defendants "will have" committed negligence and violated federal law and Plaintiff's constitutional rights "if and only if" these agencies do not assist Plaintiff in obtaining a "visa for his fiancé 'Mary from Kharkov City, Ukraine.'" (*See* ECF No. 2.) Plaintiff omitted that he also initiated a duplicative action in the U.S. District Court for the Northern District of West Virginia on the same day, of which the Court takes judicial notice. *See Emrit v. Bd. of Immigration Appeals*, 1:22-CV-00018-IMK-MJA (N.D. W. Va. Mar. 10, 2022), ECF No. 5 (recommending dismissal for lack of cognizable claims, failure to establish a ripe case or controversy, insufficient pleading, and failure to establish venue).

## II.   *SUA SPONTE* SCREENING

Generally, all parties instituting a civil action in a district court of the United States must pay a filing fee of $350.00 and an administrative fee of $52.00. 28 U.S.C.A. § 1914(a) (2020); *District Court Miscellaneous Fee Schedule*, Judicial Conference of the United States (Dec. 1, 2020) (issued in accordance with 28 U.S.C. § 1914). The action may proceed

despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). The Court grants leave to proceed IFP when a plaintiff submits an affidavit, including a statement of all of his or her assets, showing the inability to pay the statutory filing fee. *See id.* Importantly, "proceeding *in forma pauperis* is a privilege, not a right, and permission to so proceed is committed to the sound discretion of the court." *Grass v. E. Associated Coal Corp.*, 2:05-CV-0496, 2007 WL 9718153, at *2 (S.D. W. Va. Oct. 24, 2007) (citing *Camp v. Oliver*, 798 F.2d 434, 437 (11th Cir. 1986); *Carter v. Thomas*, 527 F.2d 1332 (5th Cir. 1976)). *See also Jones v. Wichita*, 20-CV-1142, 2020 WL 2850170 (D. Kan. June 2, 2020) (quoting *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998) ("Proceeding in forma pauperis in a civil case 'is a privilege, not a right—fundamental or otherwise.'")).

When a plaintiff seeks leave to proceed IFP, the district court has a duty to "screen initial filings . . . to independently assess the merits of *in forma pauperis* complaints" and "exclude suits that have no arguable basis in law or fact" pursuant to 28 U.S.C. § 1915(e). *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)). The district court *must* "dismiss a complaint filed [IFP] 'at any time if [it] determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)(2)(B)). "The overriding goal in policing [IFP] complaints is to ensure that the deferred payment mechanism of § 1915(b) does not subsidize suits that prepaid administrative costs would otherwise have deterred." *Nagy v. FMC Butner*, 376 F.3d 252, 256-57 (4th Cir. 2004).

Likewise, "the court has the power to consider *sua sponte* whether venue is proper" pursuant to its inherent power "to control and protect the administration of court

proceedings." *Jennings v. Adams*, No. 2:20-CV-00780, 2020 WL 7763339, at *1 (Dec. 4, 2020), *report and recommendation adopted*, 2020 WL 7753103 (S.D.W. Va. Dec. 29, 2020). It is appropriate for a district court to dismiss, rather than transfer, an action based upon a finding of improper venue when a plaintiff has "committed an obvious error in filing his action in the wrong court, and thereby imposed substantial unnecessary costs on both the defendant and the judicial system." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993).

Upon review of Plaintiff's request to proceed IFP in this Court (ECF No. 1), it appears that Plaintiff qualifies as a pauper pursuant to 28 U.S.C. § 1915(a)(1).[5] However, the undersigned finds that Plaintiff should not be granted leave to proceed IFP because, as set forth *infra*, Plaintiff's duplicative and abusive litigation practices continue to waste judicial resources and abuse the IFP privilege as a tool to "subsidize suits that prepaid administrative costs would otherwise have deterred." *Nagy*, 376 F.3d at 256-57. Further, the undersigned finds that Plaintiff's Complaint should be dismissed for three reasons. First, the allegations in the Complaint provide no basis for venue in this Court; second, the Complaint fails to establish cognizable claims; and third, this civil action is patently frivolous. The undersigned will address each of these in turn.

## A.  There Is No Basis for Venue in This Court.

The undersigned first finds that dismissal is proper because, as with all other cases previously filed by Plaintiff in this Court, there is no basis in the Complaint for venue in

---

[5] The application indicates Plaintiff is unemployed and has received $900.00 per month in disability benefits as well as $30.00 per month in public-assistance benefits during the twelve months prior to filing his complaint. *Id.* at 2. Plaintiff states that he has one checking account with a balance of approximately $15.00; that he has no income from real property, investments, retirement accounts, gifts, or alimony; that he has no dependents; and that he anticipates no major changes to his income over the next twelve months. *Id.* at 1-5. In contrast, Plaintiff claims monthly expenses in the total amount of $790.00. *Id.* at 5.

the U.S. District Court for the Southern District of West Virginia. Plaintiff's Complaint baldly asserts that venue is proper in this Court "pursuant to 28 U.S.C.A. Sections 1391 and 1400." (ECF No. 2 at 3.) Neither statute establishes venue in this Court. The latter, which primarily concerns patents and copyrights, is clearly inapplicable to Plaintiff's allegations regarding obtaining a visa for his fiancé. *See* 28 U.S.C. § 1400.

The former statute provides in relevant part that where—as here—all the defendants are officers, employees, or agencies of the United States, venue is generally limited to a "judicial district" in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides[.]" 28 U.S.C. § 1391(e). None of these apply. Plaintiff does not allege that any of the Defendants reside in West Virginia under § 1931(e)(1)(A); rather, Plaintiff puzzlingly asserts that "the defendant has its principal place of business (ppb) and/or nerve center in either Langley, Virginia, at a nearby FARM, or in Washington, D.C." (ECF No. 2 at 3.) Turning to § 1391(e)(1)(B), Plaintiff makes no allegation of any events taking place in West Virginia at all, let alone a "substantial" portion of the events alleged in the Complaint; rather, Plaintiff alleges that the events took place in either Florida or Maryland. *See generally id.* Nor is there any real property at issue in this action. *See id.* Third and finally, under 28 U.S.C. § 1391(e)(1)(C), Plaintiff asserts that he resides either in Florida, or at times in Maryland. *Id.* at 3. In fact, West Virginia is not mentioned in Plaintiff's Complaint at all. *See generally id.*

By initiating this action in a judicial district where venue plainly does not lie, Plaintiff "committed an obvious error in filing his action in the wrong court, and thereby imposed substantial unnecessary costs on . . . the judicial system." *Nichols*, 991 F.2d at

1201. Plaintiff continues to repeat this obvious error in this Court despite five prior orders transferring the action to other districts. *See* notes 3 and 4, *supra*. Moreover, as addressed at length, *supra*, Plaintiff's conduct is particularly concerning when taken in context with the well-documented, near-unanimous orders from multiple other district courts dismissing hundreds of prior actions on the same basis. Thus, although it would be more expedient for this Court to transfer Plaintiff's current complaint to another venue—such as the Middle District of Florida, wherein Plaintiff resides—the undersigned finds that transfer is not in the interests of justice under the circumstances. *Heck*, 2017 WL 5624943, at *1; *Sec'y, U.S. Dep't of Educ.*, 829 F. App'x at 477-78. As another district court recently noted, "[m]erely 'kicking the can' by transferring venue or issuing a warning clearly would be of no benefit to Plaintiff, to this Court, or to any other federal court to which Plaintiff's case might be transferred." *Trump*, 2019 WL 140107, at *5. In the instant case, the undersigned therefore "concludes that the better course of action is to recommend dismissal at the outset rather than to burden another federal court with this frivolous action." *Id.* at *3.

## B. <u>The Complaint Fails to Establish Cognizable Claims.</u>

Dismissal is also proper because Plaintiff's Complaint does not set forth a cognizable claim. Congress authorized the *sua sponte* dismissal of complaints which fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). While *pro se* complaints are generally held to less stringent standards than those drafted by attorneys, and must be liberally construed in favor of the plaintiff, Article III of the Constitution limits federal courts' jurisdiction to conflicts that "present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided." *Hils v. Warden, Fed. Prison Camp Alderson*, 1:19-CV-00175, 2020 WL 12739804, at *2 (S.D.W.

Va. May 6, 2020), *report and recommendation adopted*, 2021 WL 5761774 (Dec. 3, 2021)

(quoting *Ross v. Reed*, 719 f.2d 689, 693-94 (4th Cir. 1983)). Pursuant to this standard,

"[a] claim is not ripe for adjudication if it rests upon contingent future events that may

not occur as anticipated." *Texas v. United States*, 522 U.S. 296, 300 (1998). *See also*

*Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (explaining that the "action in

controversy" must be "final and not dependent on future uncertainties").

Here, just as the Northern District of West Virginia and the Eastern District of

Virginia noted in Plaintiff's duplicative actions, the Complaint fails to satisfy the

requirements of the ripeness doctrine because the action is not final and depends on

future uncertainties. *Emrit v. Bd. of Immigration Appeals*, 1:22-CV-00018-IMK-MJA

(N.D. W. Va. Mar. 10, 2022), ECF No. 5 at 7; *Emrit v. Bd. of Immigration Appeals*, 3:22-

CV-00117-JAG (E.D. Va. Mar. 1, 2022), ECF No. 2 at 2.  Plaintiff's claims depend on

whether Mary from Kharkov City, Ukraine, will secure a visa. Absent any allegation that

Mary applied for a visa and her application has been denied, this case is simply not ripe

for adjudication.[6] Thus, dismissal is warranted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## C.    Plaintiff's Claims are Frivolous.

Finally, dismissal is also warranted pursuant to 28 U.S.C. § 1915(e) because—just

as numerous other district courts have consistently found under strikingly similar

circumstances—Plaintiff's claims are frivolous and duplicative. When screening an initial

filing to assess the merits of an IFP complaint, courts must "conduct a flexible analysis,

in light of the totality of the circumstances, of all factors bearing on the frivolity of a

claim." *Nagy*, 376 F.3d at 257. In general, however, "a complaint 'is frivolous where it

---

[6] Likewise, the failure of Plaintiff to first exhaust his administrative remedies through proceedings before the Board of Immigration Appeals is fatal to his claims. *Atemnkeng v. Barr*, 948 F.3d 231, 240 (4th Cir. 2020).

lacks an arguable basis either in law or in fact.'" *Id.* at 256-57 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). An action has no arguable legal basis when the defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327.

Here, even if this action were ripe for adjudication, the legal interests at issue clearly do not exist. Neither the "emergency of the war in Ukraine" nor the "broad interpretation of the stare decisis of *Miller v. Albright*" authorize the district court to "mandat[e] that the five defendants" dispense with the "red tape" and "paperwork" of immigration proceedings and "provide assistance or help to the plaintiff" in completing his fiancé's visa application. Rather, Congress conferred broad executive power to the Attorney General for "the administration and enforcement" of the Immigration and Nationality Act ("INA") "and all other laws relating to the immigration and naturalization of aliens." *Atemnkeng*, 948 F.3d at 239 (citing 8 C.F.R. § 1003.1(a)(1), (e)(4)). Pursuant to the INA, it is the Attorney General who is empowered to adopt any "regulation for any other conditions or limitations on the consideration of an application for asylum not inconsistent with [the INA]." *Id.* (citing 8 U.S.C. §§ 1103(a)(3), § 1158(d)(5)(B)). And pursuant to those powers under the INA, "the Attorney General issued regulations creating the [Board of Immigration Appeals ("BIA")] as the administrative appellate body for asylum cases and setting forth a streamlined review process." *Id.* (citing 8 C.F.R. § 1003.1(a)(1), (e)(4)). Under this framework, the instant action simply lacks any arguable legal basis; therefore, the undersigned finds that Plaintiff's Complaint is frivolous under § 1915(e)(2)(B).

The frivolousness of this action is further compounded by the fact that it is duplicative of actions filed by Plaintiff in other district courts. As set forth in Section I.B.,

*supra*, Plaintiff filed an identical complaint in the Northern District of West Virginia on the same day that he initiated this action; both complaints specifically state that Plaintiff also filed the same cause of action in the District of Maryland and Eastern and Western Districts of Virginia. (ECF No. 2 at 3.) Plaintiff's scattershot approach to filing duplicative complaints is nothing new. As the Northern District of Florida recently observed, "Plaintiff has an apparent penchant for filing the same case simultaneously in multiple districts. This case is an example." *Devos*, 2020 WL 1669872, at *1 (noting that Plaintiff had filed "the identical complaint" in seven other district courts). *See also Devos*, 2020 WL 9078298, at *2 (noting that Plaintiff filed identical lawsuits "in at least ten other jurisdictions, in addition to the multitude of other meritless and frivolous lawsuits that he is pursuing across the United States at this time"). This pattern continues even though Plaintiff has been explicitly informed that "[i]t is clearly improper and an abuse of the judicial process to pursue identical claims in multiple jurisdictions." *Devos*, 2020 WL 1669872, at *2. Simply put, in the face of consistent court orders specifically explaining the errors in his litigation conduct, Plaintiff simply had no good-faith basis to initiate the instant action in this district.

Plaintiff's bad-faith conduct continues to impose substantial, unnecessary costs on the judicial system, and waste judicial resources. As the Western District of Texas explained when it dismissed Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), Emrit's *pro se* status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Nat'l Acad. of Recording Arts & Scis.*, 2015 WL 518774, at *2, 4. Thus, in view of the patent frivolity of Plaintiff's claims, Plaintiff's prior notice by numerous federal courts of the impropriety of such filings, and Plaintiff's

continued, well-documented abuse of the judicial process, the undersigned recommends that Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1) be denied, and that the Complaint (ECF No. 2) be dismissed with prejudice pursuant to § 1915(e)(2)(B).

### III.    **PREFILING SANCTIONS**

Further, prefiling sanctions are necessary to deter Plaintiff from further abuse of the IFP privilege in this Court and to protect the public and the Court from further waste of judicial resources. The undersigned therefore recommends that—consistent with numerous other district courts—Plaintiff be declared a "vexatious" litigant and his IFP privilege be appropriately limited. This Court is authorized to impose such sanctions under the circumstances, because "the All Writs Act, 28 U.S.C. § 1651(a), empowers federal district courts to enjoin vexatious litigants who have a history of abusing the court's limited resources." *Soc. Sec. Admin.*, 2015 WL 4597834, at *4 (finding that Plaintiff was a vexatious litigant and enjoining him from making further filings absent prior leave of court). *See also Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004) ("Undoubtedly, the All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants[.]").

The Fourth Circuit set forth four factors that "a district court should consider," along with all the relevant circumstances, "in deciding whether to issue a prefiling injunction" as a sanction. *Thomas v. Fulton*, 260 F. App'x 594, 596 (4th Cir. 2008) [hereinafter referred to as the *Thomas* factors]. First, the Court must consider Plaintiff's "history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits." *Id.* Second, the Court must consider whether Plaintiff "had a good faith basis for pursuing the litigation, or simply intended to harass." *Id.* Third, the Court

must consider "the extent of the burden on the courts and other parties resulting from the [Plaintiff's] filings." *Id.* Fourth and finally, the Court must consider "the adequacy of alternative sanctions." *Id.* While such an injunction should be used sparingly and "remain very much the exception to the general rule of free access to the courts," the Fourth Circuit explained that a district judge may limit a litigant's access to the courts in "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Cromer*, 390 F.3d at 818 (citing *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)). There can be no question in this case that Plaintiff's continued abuse of the IFP privilege—clogging the district courts' dockets with meritless, duplicative, and repetitious actions—forms precisely the "exigent circumstances" contemplated by the Fourth Circuit in *Cromer* and satisfies all four *Thomas* factors. 390 F.3d at 818.

The first *Thomas* factor, Plaintiff's history of litigation, weighs strongly in favor of sanctions. *Thomas*, 260 F. App'x at 596. As set forth in detail in Section I.A., *supra*, the Plaintiff's decade-long, "unusually extensive nationwide litigation history" of frivolous, duplicative suits is well-documented by district courts across the country. *Trump*, 2019 WL 140107, at *3; *see also Nat'l Acad. of Recording Arts & Scis.*, 2015 WL 518774, at *3 (stating that Plaintiff "certainly has such a history of submitting multiple frivolous claims"); *Fed. Bureau of Investigation*, 2020 WL 731171, at *1 n.1 ("Plaintiff has a history of abusing the IFP privilege and Plaintiff has been acknowledged as a vexatious litigator in at least six district courts."); *Universal Music Grp.*, 2019 WL 6251365, at *2 (same); *Soc. Sec. Admin.*, 2015 WL 4597834, at *9 (declaring Plaintiff to be a vexatious litigant pursuant to 28 U.S.C. § 1651(a) and enjoining Plaintiff "from filing any complaint, petition, or other document in this court without first obtaining leave of this court"). Most

or all of these complaints have been dismissed for improper venue or failure to state a claim, including five cases in this Court—all of which were transferred by this Court to either the District of Maryland or the Western District of Pennsylvania based upon improper venue. *See* notes 3 and 4, *supra*; *see also Fed. Bureau of Investigation*, 2020 WL 731171, at *1. As the District of Nevada explained, Plaintiff's pattern of conduct rises above mere litigiousness, "amounting to a pattern of harassing litigation." *Soc. Sec. Admin.*, 2015 WL 4597834, at *8. *See also Universal Music Grp.*, 2019 WL 6251365, at *2 (finding a complaint to be "part of [Plaintiff's] ongoing and persistent pattern of abusing the IFP privilege by filing vexatious, harassing, and duplicative lawsuits").

The second *Thomas* factor also weighs in favor of sanctions because Plaintiff lacked "a good faith basis for pursuing the litigation." *Thomas*, 260 F. App'x at 596. As an extraordinarily prolific serial plaintiff in the federal courts, Emrit is described as a "savvy and experienced *pro se* litigant" who "is more than familiar with his federal court filing and pleading responsibilities." *Devos*, 2020 WL 9078298, at *3; *see also Sec'y of Hawaii*, 2018 WL 264851, at *2. In this case, Plaintiff continues to flout repeated warnings of the consequences of his failure to meet those responsibilities.[7] *See Nat'l Acad. of Recording Arts & Scis.*, 2015 WL 518774, at *2, 4 (explaining that "Emrit has been repeatedly warned against filing meritless and frivolous claims by this and other courts").

---

[7] Additionally, this Court's Pro Se Handbook expressly notifies *pro se* litigants that "[i]f you decide to proceed pro se, you will be responsible for learning about and following all the procedures that govern the court process." Pro Se Handbook, at § 2.3 p. 3-4. This means that pro se litigants "are responsible for becoming familiar with and following the Court's local rules and procedures . . . [including] read[ing] the Federal and Local Rules of Procedure and becom[ing] familiar with them" *Id.* at § 4 p. 11. Moreover, "[t]he Court may penalize a party or attorney for failing to comply with a law, rule or order at any point while a lawsuit is pending . . . and pro se litigants are subject to the same sanctions as licensed attorneys." *Id.* at § 2.3 p. 4.

Plaintiff particularly demonstrates a lack of good faith under this second *Thomas* factor with his "repetitious filing of cases with no possible venue." *Trump*, 2019 WL 140107, at *3. *See also Sec'y, U.S. Dep't of Educ.*, 829 F. App'x at 477 (finding that Emrit "filed this case simultaneously in multiple districts, thus abusing the judicial process" and, further, that "his multiple simultaneous and identical filings belie . . . that he is a 'vexatious filer,' as do his filings of some 260 *pro se* civil cases in federal courts across the country"). Plaintiff has been expressly notified of the minimum pleading requirement to establish venue on numerous occasions. For example, in 2020, the District of Hawaii explained that dismissal was proper because Plaintiff's complaint before that court "allege[d] no plausible basis for venue in the District of Hawaii" when it did not allege "that any party resides in Hawaii, or that any event or omission giving rise to the claims asserted in the complaint occurred in Hawaii." *Horus Music Video Distrib.*, 2020 WL 1822597, at *4.

Despite this clear communication to Plaintiff of the minimum requirements for a plausible basis for venue, in the instant case Plaintiff failed to allege that any party to the instant case resides in West Virginia, or that any event or omission giving rise to the claims asserted in the complaint occurred in West Virginia—or was even tangentially related to West Virginia in any way. (*See* ECF No. 2.) The Complaint fails to mention West Virginia at all, let alone set forth any connection between the allegations therein and this Court. Rather, Plaintiff admits in his Complaint that he filed duplicative actions in multiple districts along with this case. *Id.* at 3 (stating that Plaintiff also filed the same cause of action in the District of Maryland and the Eastern and Western Districts of Virginia.) Plaintiff further omits that he also filed a duplicative case in the Northern District of West Virginia on the same day that he filed the instant action. *See Bd. of*

*Immigration Appeals*, 1:22-CV-00018-IMK-MJA, (N.D. W. Va. Mar. 3, 2022), ECF No. 1. This pattern continues even though Plaintiff has been explicitly informed that "[i]t is clearly improper and an abuse of the judicial process to pursue identical claims in multiple jurisdictions." *Devos*, 2020 WL 1669872, at *2.

Similarly, Plaintiff's pleading obligations under the Federal Rules have been explained to him at length, and he was expressly instructed by the Eastern District of Virginia regarding the ripeness doctrine. *Bd. of Immigration Appeals*, 3:22-CV-00117-JAG, ECF No. 2 at 2. However, the Complaint in this case suffers from *precisely* the same defects and was filed mere days after the Eastern District of Virginia dismissed Plaintiff's complaint in that case. Simply put, in the face of consistent court orders specifically explaining the errors in his litigation conduct, Plaintiff simply had no good-faith basis to initiate the instant action in this Court.

The third *Thomas* factor—the extent of the burden on the courts and other parties resulting from the Plaintiff's filings—likewise weighs in favor of sanctions. *Thomas*, 260 F. App'x at 596. "Without a doubt, a litigant who files a case without merit wastes the . . . limited resources of the court" as well as the named defendants. *Trump*, 2019 WL 140107, at *5. This is especially true under the circumstances due to Plaintiff's habit of making duplicative filings in multiple jurisdictions. *See In re Sindram*, 498 U.S. 177, 179-80 (1991) (denying IFP status to a petitioner in all future petitions for extraordinary relief based upon history of repetitious and frivolous filings).

Compounded by the string of venue transfers and duplicative filing of the same suit in different district courts, Plaintiff's abuse of the IFP privilege duplicates and multiplies the work of the district courts, wasting additional resources and overburdening courts' gatekeeping function. As the District of Nevada observed when it found that this factor

weighed in favor of sanctions, Plaintiff's "voluminous and frivolous filings in [more than] twenty-five separate federal district courts and ten different circuit courts . . . have caused the courts to expend a huge amount of judicial resources to the detriment of other litigants who need and deserve the Court's attention." *Soc. Sec. Admin.*, 2015 WL 4597834, at \*8. The Middle District of Florida similarly observed, in declaring Plaintiff a vexatious litigant and imposing prefiling sanctions, that "the public is not well-served" when "the court system [is] weaponized by any party for improper purposes" because "[j]udicial time and resources are wasted . . . [and] of course, diverted from legitimate, meritorious claims." *Devos*, 2020 WL 9078298, at \*3. The Southern District of Ohio likewise noted under similar circumstances that "Plaintiff's *pro se* status is no excuse for wasting the Court's limited resources and depriving other litigants with meritorious claims of speedy resolutions of their cases by the continual filing of frivolous lawsuits." *Trump*, 2019 WL 140107, at \*5.

The fourth and final *Thomas* factor also weighs in favor of sanctions because the inadequacy of alternative sanctions is well-documented. *Thomas*, 260 F. App'x at 596. Even though Plaintiff has not received prior warnings from *this* Court that he could be subject to sanctions if he continued to file frivolous lawsuits in this jurisdiction, the undersigned finds that a lesser sanction such as a warning would be futile in light of Plaintiff's demonstrated failure to heed similar warnings. Indeed, Plaintiff's litigation history demonstrates that he is highly likely to continue in his abuse of the IFP privilege in this Court.

As Magistrate Judge Bowman of the Southern District of Ohio explained in *Trump*, a pre-filing sanction is necessary because Plaintiff falls into a "unique category of abusive litigators" who would otherwise waste "additional resources in the course of judicial

gatekeeping." *Trump*, 2019 WL 140107, at *5. Despite being "repeatedly warned [of sanctions] by other federal courts," Judge Bowman observed that Plaintiff "has demonstrated no ability to curtail his litigation practices nationwide, much less in this Court." *Id*. at *3, 5. Indeed, notwithstanding the trail of "sanctions and admonishments, as well as a resounding lack of success in the federal courts that would give pause to most litigants, Plaintiff has given no hint of abating his pernicious conduct." *Trump*, 2019 WL 140107, at *2. *See also Soc. Sec. Admin*., 2015 WL 4597834, at *8 (finding that, though Plaintiff had "been repeatedly warned about filing meritless and frivolous claims by many other federal district courts and appellate courts[,] [a]s demonstrated by [Plaintiff's] national filing history, those warnings have had no effect"). For that reason, Judge Bowman concluded that "the only way to effectively stop" Plaintiff's abusive conduct was to impose prefiling sanctions. *See id*. That is no less true today, as Plaintiff has continued the same pattern of conduct in this case. Thus, each of the four *Thomas* factors weigh in favor of sanctions. As numerous district courts previously determined under strikingly similar circumstances, the undersigned finds that a prefiling injunction is necessary.

In order to impose this sanction, "the court must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." *Thomas*, 260 F. App'x at 596. Addressing this issue in *Trump*, Judge Bowman recommended that Plaintiff be classified as a harassing and vexatious litigator in the Southern District of Ohio and pre-filing restrictions be imposed enjoining Plaintiff from filing any further complaints in that district unless he either paid the full filing fee or obtained a certification from an attorney in good standing that Plaintiff was filing suit in the correct venue. *Trump*, 2019 WL 140107, at *5. Here, in light of the well-documented dismissal orders from other district courts addressed at length, *supra*, as well as Plaintiff's filing of an identical complaint in

the Northern District of West Virginia on the same day that he initiated this action, *and* the express acknowledgement in the Complaint that Plaintiff knowingly filed this same cause of action in the District of Maryland and Eastern and Western Districts of Virginia despite being warned that this is improper, the undersigned concurs with Judge Bowman that a similar sanction is appropriate in this case to deter Plaintiff from filing repetitive, duplicative, and frivolous lawsuits in this Court that waste the Court's limited judicial resources and clog its docket with meritless litigation. *Id*. at \*3, 5.

This sanction is narrowly tailored to fit the specific circumstances at issue and serves "[t]he overriding goal in policing [IFP] complaints[,] [which] is to ensure that the . . . mechanism of § 1915(b) does not subsidize suits that prepaid administrative costs would otherwise have deterred." *Nagy*, 376 F.3d at 256-57. That is precisely the concern here. Presently, a litigant who wishes to initiate a civil suit in federal court without the IFP privilege is generally subject to a $350.00 statutory filing fee as well as a $52.00 administrative fee, totaling $402.00. *See* 28 U.S.C.A. § 1914(a) (2020); *District Court Miscellaneous Fee Schedule*, Judicial Conference of the United States (Dec. 1, 2020) (issued in accordance with 28 U.S.C. § 1914). Accordingly, without the IFP privilege, Plaintiff's decision to file his Complaint in this case along with duplicative complaints in the U.S. District Courts of Maryland, Eastern Virginia, Western Virginia, and Northern West Virginia, ostensibly would have cost him approximately $ 2,010.00. *See id*. Likewise, while district court fees have increased periodically, it is clear that the approximately 300 lawsuits Plaintiff brought in federal district courts nationwide over the past decade would have cost him many thousands of dollars. Thus, without the IFP subsidy, at minimum Plaintiff would have been incentivized to thoughtfully consider the proper venue rather than the "shotgun" approach he has taken.

Importantly, the undersigned's recommended sanction is narrowly tailored to address the central concern—preventing Plaintiff from abusing the IFP privilege—without barring Plaintiff's access to the court. Plaintiff remains free to proceed upon payment of the Court's filing fee; he is merely precluded from receiving the IFP *privilege* "without first ascertaining the appropriate venue." *Id.* at *3. Accordingly, the undersigned recommends that Plaintiff Ronald Satish Emrit be declared a harassing and vexatious litigant pursuant to 28 U.S.C. § 1651(a), and enjoined from filing any additional complaints in this Court without either full payment of the applicable fees, or obtaining a certification from an attorney in good standing that he is filing suit in the correct venue. *Trump*, 2019 WL 140107, at *5.

## IV.   RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** as follows:

(1)    Plaintiff's Application to Proceed in District Court without Prepaying Fees or Costs (ECF No. 1) be **DENIED**,

(2)    Plaintiff's Complaint (ECF No. 2) be **DISMISSED**, with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B);

(3)    Plaintiff Ronald Satish Emrit be declared a harassing and vexatious litigant pursuant to 28 U.S.C. § 1651(a), and therefore be **ENJOINED AND PROHIBITED** from filing any additional complaints in this Court unless accompanied by either:

   i.    full payment of the statutory and administrative filing fees; or

   ii.    an affidavit by a licensed attorney in good standing in this Court or the jurisdiction in which he or she is admitted, attesting that he or she has reviewed such complaint and that the factual allegations

contained therein provide a good-faith basis for venue in this Court; and

(4)     The Clerk of Court be **DIRECTED** not to accept any pleadings from the identified Plaintiff herein, absent compliance with the above restrictions, and be **AUTHORIZED** to reject and refuse to file, and/or discard any new complaint, petition, document on a closed case, or any other document submitted in violation of the Court's Order.

The Plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 6(d) and 72(b), the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.  Copies of such objections shall be provided to Judge Goodwin.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff.

ENTER:        March 30, 2022

Dwane L. Tinsley
United States Magistrate Judge